EARL J. LOLLIS and RUTH LOLLIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lollis v. Commissioner
Docket No. 6992-73
United States Tax Court
T.C. Memo 1976-15; 1976 Tax Ct. Memo LEXIS 390; 35 T.C.M. (CCH) 43; T.C.M. (RIA) 760015; January 20, 1976, Filed *390 Respondent redetermined petitioner's income from his business activity using the bank deposits and cash expenditures method. Held: Respondent's use of this method is justified and his determination, with some modification, is upheld. Held further: Respondent's imposition of the addition to tax under section 6653(b) is proper. John Bucan and William T. Ivey, Jr., for the petitioners. Edward B. Simpson, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: The respondent determined a deficiency in petitioners' income tax and additions thereto for the taxable years 1963, 1964, 1965, and 1966 as follows: Additions to tax
Year
Deficiency
6653(b)
1963
$ 17,713.80
$ 8,856.90
1964
12,039.76
6,019.88
1965
8,566.65
4,283.33
1966
8,792.61
4,396.30 The issues for decision are whether the petitioners have understated their taxable income and whether any part of any resulting underpayments of tax as determined by the respondent was due to fraud thereby subjecting petitioner Earl J. Lollis to liability for the penalty imposed by section 6653(b), Internal Revenue Code of 1954. [1] Respondent has conceded that no part of any underpayment determined to be due in the years in issue *391 was due to the fraud of petitioner Ruth Lollis. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated by this reference. Petitioners Earl J. Lollis (hereinafter petitioner) and Ruth Lollis are husband and wife who resided in Dos Palos, California at the time of the filing of their petition herein. Petitioners timely filed their joint federal individual income tax returns for the years 1963, 1964, 1965 and 1966 with the district director of internal revenue, San Francisco, California. Petitioners kept their records and filed these returns utilizing the cash basis method of accounting. Petitioner came to Dos Palos in approximately 1956 and worked for his father at his gas station. Prior to that petitioner had operated a small grocery store. In 1958 petitioner's father left the business and petitioner operated the station as a sole proprietorship until 1963. In 1964 petitioner and his son, Carl W. Lollis (hereinafter Carl), formed a partnership known as W&L Auto Parts (hereinafter W&L) and this relationship *392 has continued up to the time of trial. During the years in issue the gas station was located at the intersection of two highways approximately 4 miles north of Dos Palos. Petitioner's business was principally selling gasoline and auto parts. He also operated a towing service and a vehicle rental franchise. For the taxable years 1964, 1965, and 1966 W&L's books and records were kept on a calendar year basis utilizing the cash basis method of accounting, and its partnership tax returns for these years were timely filed with the internal revenue service. During the years in issue petitioner kept his records on ledger sheets. These sheets contained columns for his various income and expense items. These columns were totaled monthly and then entered on summary sheets. The ledger sheets supporting the summary entries for 1963 could not be located. The monthly summaries were taken by petitioner to his accountant who used them to prepare petitioner's tax returns. The accountant did ask to see some of petitioner's detailed records, but he did not make a thorough audit of petitioner's records. The following figures were reported by the petitioner on his tax return for 1963 and on W&L's returns *393 for the years 1964, 1965 and 1966: 1963
1964
1965
1966
Gross Receipts
$ 47,025.91
$ 40,776.45
$ 32,796.50
$ 49,177.00
Cost of Goods Sold
35,971.37
29,295.99
19,752.47
34,491.00
11,054.54
11,480.46
13,044.03
14,686.00
Rental Income
1,279.05
1,292.75
924.32
848.00
Gross Income
12,333.59
12,773.21
13,968.35
15,534.00
Total Other Expenses
7,323.21
6,910.62
6,570.19
6,887.00
Net Profit
$ 5,010.38
$ 5,862.59
$ 7,398.16
$ 8,647.00
During the years in issue W&L maintained a single business checking account at the Dos Palos branch of the Bank of America. Copies of the checking account bank statements for each year which reflect all deposits and withdrawals in numerical terms, and copies of all the deposit slips used for deposits to this account, with minor exceptions, have been made a part of this record. These slips consist almost entirely of deposits made by check and all are in petitioner's handwriting. During 1963 deposits to W&L's checking account totaled $ 95,431.48. These deposits consist of receipts from goods and services sold and are gross business receipts except for $ 2,000 which represents repayment of a loan and $ 987.42 of checks that were deposited but not paid. During 1963 an additional amount of $ 2,399.20 in *394 checks was made payable to or for W&L for goods and services which were not deposited in the checking account, but said checks were cashed by the petitioner. This amount represents gross business receipts of W&L. For 1963 the gross receipts of W&L are reduced for cost of goods sold and business expenses toward the determination of net business income as follows: Business expenses paid in currency
$ 1,657.59
Beginning inventory
23,761.10
Ending inventory
(23,589.60)
Personal portion of utilities
(500.00)
Business expenses and cost of
goods sold
43,350.44
Depreciation
2,146.00 The above figure of $ 43,350.44 is the total of debits to W&L's checking account which, through audit and investigation, has been determined and agreed to by the parties to be business expenses or cost of goods sold items which reduce W&L's gross receipts and income accordingly. During 1964 the deposits to the checking account totaled $ 128,350 and consisted of receipts from goods and services sold and are gross receipts to W&L as follows: $ 17,000 which was transferred from petitioner's savings account, $ 2,147 which was received in repayment of a loan, $ 3,085.99 of checks which were deposited and not paid, and $ 4,866.87 *395 which was collected for the vehicle rental franchise. During 1964 an additional $ 3,983.06 in checks were made payable to or for W&L for goods and services, and W&L received $ 5,350 as rental income. These amounts which represent gross business receipts were not deposited in the checking account. During 1964 Carl received his distributive share of the partnership net ordinary income of $ 3,000 in currency. This amount was received by W&L for goods and services and was not deposited in the checking account. For 1964 the gross partnership income of W&L is reduced for cost of goods sold and business expenses toward the determination of net ordinary partnership income as follows: Business expenses paid in currency
$ 3,995.35
Beginning inventory
23,589.60
Ending inventory
(20,282.40)
Personal portion of utilities
(500.00)
Rent paid parents by checks
5,350.00
Business expenses and cost of
goods sold
61,367.69
Depreciation
1,703.00 The above amount of $ 61,367.69 is the total of debits to W&L's checking account which, through audit and investigation, has been determined and agreed to by the parties to be business expenses or cost of goods sold items which reduce W&L's gross receipts and income accordingly. *396 During 1965 the deposits to the checking account totaled $ 85,698.80 and consisted of receipts from goods and services sold and are gross receipts to W&L except as follows: $ 1,966.72 of checks which were deposited and not paid, $ 3,261.95 which was collected for the vehicle rental franchise, and $ 1,100 which represents rental income to the petitioners on property not owned by W&L. During 1965 an additional $ 4,929.54 in checks were made payable to or for W&L for goods and services, and W&L received $ 5,400 as rental income. These amounts which represent gross business receipts were not deposited in the checking account. During 1965 Carl received his distributive share of the partnership net ordinary income of $ 3,500 in currency. This amount was received by W&L for goods and services and was not deposited in the checking account. For 1965 the gross partnership income of W&L is reduced for cost of goods sold and business expenses toward the determination of net ordinary partnership income as follows: Business expenses paid in currency
$ 1,633.68
Beginning inventory
20,282.40
Ending inventory
(17,984.25)
Personal portion of utilities
(500.00)
Rent paid parents by check
5,400.00
Business expenses and cost of
goods sold
45,539.17
Loan repaid in goods and
allowed as cost of goods sold
2,000.00
Depreciation
1,597.00
*397 The above amount of $ 45,539.17 is the total of debits to W&L's checking account which, through audit and investigation, has been determined and agreed to by the parties to be business expenses or cost of goods sold items which reduce W&L's gross receipts and income accordingly. During 1966 the deposits to the checking account totaled $ 92,356.38 and consisted of receipts from goods and services sold and are gross receipts to W&L except as follows: $ 1,273.96 of checks which were deposited and not paid, $ 3,143.95 which was collected for the vehicle rental franchise, and $ 1,680 which represents rental income to the petitioners on property not owned by W&L. During 1966 an additional $ 2,577.71 in checks were made payable to or for W&L for goods and services, and W&L received $ 5,400 as rental income. These amounts which represent gross business receipts were not deposited in the checking account. During 1966 Carl received $ 5,670 of his distributive share of the partnership net ordinary income of $ 6,000 in currency. This amount was received by W&L for goods and services and was not deposited in the checking account. For 1966 the gross partnership income of W&L is reduced for cost *398 of goods sold and business expenses toward the determination of net ordinary partnership income as follows: Business expenses paid in currency
$ 1,369.20
Beginning inventory
17,984.25
Ending inventory
(18,026.00)
Personal portion of utilities
(500.00)
Rent paid parents by checks
5,400.00
Business expenses and cost
of goods sold
57,911.41
Depreciation
1,575.00 The above amount of $ 57,911.41 is the total of debits to W&L's checking account which, through audit and investigation, has been determined and agreed to by the parties to be business expenses or cost of goods sold items which reduce W&L's gross receipts and income accordingly. Under the profit and loss partnership agreement between petitioner and Carl, Carl received his full distributive share of the partnership's income. The parties have agreed that, if it is determined that there is any additional ordinary net income not reported by W&L for 1964, 1965, and 1966, such additional amount is allocable in its entirety to petitioner. In March, 1971 petitioner was cited in a six count indictment issued by the grand jury for the United States District Court for the Northern District of California, Northern Division for violations of section 7201 *399 and 7206(1) in the preparation and filing of his individual and partnership tax returns for 1964 and 1965. Pursuant to discussions between a representative of the United States Attorney's office and petitioner's attorney, petitioner pled guilty to making and subscribing a false partnership return for the calendar year 1964, a violation of section 7206(1), and in connection therewith the remaining counts in the indictment were dismissed and judgment was issued accordingly. For the years in issue schedules were made identifying those cost of goods sold and business expenses that the parties have agreed to as being properly allowable. Additional schedules were made to substantiate the other items agreed to by the parties which include checks cashed but not paid, personal expenses and checks to parents, rent payments to parents, and payments to the vehicle rental franchise. A schedule was then made listing all of the remaining unidentified checks. Petitioners agree that $ 30,375.45, $ 16,225.78, $ 16,286.02, and $ 6,953.19 for the years 1963, 1964, 1965 and 1966, respectively, is the total amount of the unidentified debits in the checking account. Respondent's regular and special agents *400 have conducted a long examination of petitioner's records. An analysis of the cash deposited during these years did not reveal a hidden source of funds. In addition they circularized many banks and did not discover any secret accounts. Respondent was also familiar with petitioner's personal expenditures and the parties have agreed that $ 2,000 for these items for each year is appropriate. Petitioner did not have the benefit of much formal education and he was not instructed on record keeping methods by his accountant. Despite these disabilities petitioner was aware of his responsibilities to file tax returns and that all items had to be included so that his taxable income would be properly stated. Based upon his investigation of petitioner's records respondent determined that petitioner's taxable income for 1963 and W&L's net partnership income for 1964, 1965, and 1966 was understated. This determination was based with "reference to bank deposits and cash payments plus personal and nondeductible expenditures". Respondent also "determined that all or part of the underpayment of tax required to be shown on the returns [for the years in issue was] due to fraud". Accordingly the 50 percent *401 addition to tax provided by section 6653(b) was imposed for each year. OPINION The case at bar requires us to decide whether respondent has correctly determined petitioner's taxable income for 1963, 1964, 1965, and 1966 and whether any portion of any resulting underpayments of tax is due to fraud thereby subjecting petitioner to the addition to tax imposed by section 6653(b). A taxpayer is required to keep such books and records as are sufficient to reflect accurately his income. Section 6001; section 1.6001-1, Income Tax Regs. In the absence of such records the respondent, under section 446, has broad power to choose and employ a method to reconstruct income. In this case it is clear that much of petitioner's records were either missing or without adequate supporting documentation. Petitioner has conceded that his checking account deposits and other items which represent gross business receipts were in excess of those reported on his tax returns for each year. Petitioner does not object to the respondent's method of income reconstruction, but rather objects to respondent's position of not allowing a portion of the unidentified debits as cost of goods sold or business expenses and *402 including other items as gross business receipts. Many of the figures that are a part of respondent's reconstruction of petitioner's income have been agreed to by the parties. Respondent's calculations for the years in issue are as follows: 1963
1964
1965
1966
Total Bank Deposits
$ 95,431.48
$ 128,350.00
$ 85,698.80
$ 92,356.38
Adjustments
Repayment of loan
2,000.00
2,147.00
Unpaid checks
987.42
3,085.99
1,966.72
1,273.96
Savings transfer
17,000.00
Vehicle franchise
4,866.87
3,261.95
3,143.95
Rental income
1,100.00
1,680.00
Net Deposits
$ 92,444.06
$ 101,250.14
$ 79,370.13
$ 86,258.47 [2]
Income Not Deposited
Checks cashed
$ 2,399.20
$ 3,983.06
$ 4,929.54
$ 2,577.71
Partnership income
to Carl
3,000.00
3,500.00
5,670.00
Rental income-parents
5,350.00
5,400.00
5,400.00
Personal expenses
2,000.00
2,000.00
2,000.00
Funds withheld from
deposit [3]
2,135.17
Total Income
$ 94,843.26
$ 115,583.20
$ 95,199.67
$ 104,041.35
Cost of Goods Sold
and Expenses
Cost of goods sold and
business
$ 43,350.44
$ 61,367.69
$ 45,539.17
$ 57,911.41
expenses-checks
Business expenses-cash
1,657.59
3,995.35
1,633.68
1,369.20
Beginning inventory
23,761.10
23,589.60
20,282.40
17,984.25
Ending inventory
(23,589.60)
(20,282.40)
(17,984.25)
(18,026.00)
Personal portion of
utilities
( 500.00)
( 500.00)
( 500.00)
( 500.00)
Depreciation
2,146.00
1,703.00
1,597.00
1,575.00
Rent paid
5,350.00
5,400.00
5,400.00
parents-checks
Loan repaid in goods
2,000.00
Total Expenses [4]
$ 46,825.53
$ 75,223.24
$ 57,968.00
$ 65,713.86
Net Ordinary Income
$ 48,017.73
$ 40,359.96
$ 37,231.67
$ 38,327.49
Carl's Distributive
3,000.00
3,500.00
6,000.00
Share
Petitioner's
Partnership
Income
$ 48,017.73
$ 37,359.96
$ 33,731.67
$ 32,327.49
Income Previously
3,731.33
2,862.59
3,898.16
2,647.00
Reported
Potential
$ 44,286.40
$ 34,497.37
$ 29,833.51
$ 29,680.49
Understatement
Other Rental Income
Not Reported
1,100.00
1,680.00
Total Potential Under-
statement
$ 44,286.40
$ 34,497.37
$ 30,933.51
$ 31,360.49
Potential Deductible
Expenses
$ 30,375.46
$ 16,225.78
$ 16,286.02
$ 6,953.19
*403 Petitioner's main argument is that approximately 70 percent of the potential deductible expenses should be included as deductible cost of goods sold or business expenses in respondent's calculation of the understatements for each year. This position is supported by schedules prepared by petitioner's new accountant *404 who acquired the petitioner as a client in 1968. These schedules reflect W&L's activity for the period 1967 through September 30, 1973 [5] and show that the average cost of goods sold figure for that period was 70.14 percent of the gross receipts. Petitioner also introduced tables compiled by Dun & Bradstreet, Inc. based on figures found on tax returns filed by taxpayers in various businesses for the years 1962-1963 and 1967. For taxpayers operating the type of business in which the petitioner was engaged the cost of goods sold figure was approximately 76 percent of gross receipts. Petitioner also points to his modest manner of living, the fact that several items personal in nature have been considered, and that neither a secret fund nor an indication of one has been discovered. Petitioner believes that respondent has acted arbitrarily in totally disallowing these expenses and argues that at least a portion of them should be allowed. The total of these expenses for each year, to which the parties have agreed, was arrived at by elimination. These figures represent those *405 debits to the checking account which could not be explained. These debits have been collected on schedules that merely show the date the check cleared and the amount. With respect to this issue petitioner has the burden of proof. He has not presented any direct evidence as to the nature of these amounts, but relies on the pattern shown by his prepared schedules, the factors noted above, and his own testimony in which he identified these debits as business expenses. Respondent objects to the introduction of petitioner's schedules noting that they cover years not in issue and that the figures have not been reviewed. However, we believe these schedules have some relevance and do provide some basis for making a determination. Respondent's special agent, who thoroughly examined petitioner's books and records, also testified that he believed that a portion of these debits could be business expenses. We obviously agree with respondent that the petitioner has the burden of proof in this matter. We also do not intend to relieve the petitioner or any taxpayer of his responsibility for keeping accurate and complete records. However, when, as in this case, it appears that a portion of the disputed *406 amounts does represent valid business expenses, we believe that we are compelled to use our best judgment to make an appropriate allocation. Cohan v. Commissioner,39 F. 2d 540 (2nd Cir. 1930). Accordingly, based on the evidence in the record we find that 40 percent of the potential cost of goods sold or business expenses for each year in issue represents deductible expenses which should be included by respondent in his calculation of petitioner's final tax liability for the years in issue. Included in respondent's reconstruction of petitioner's income for 1964, 1965, and 1966 are figures for the amounts paid in currency to Carl for his distributive share of the partnership's income ($ 3,000, $ 3,500, and $ 5,670, respectively) and the amounts used by petitioner for personal expenses during these years ($ 2,000 for each year). Petitioner contends that these amounts should not be included since the funds for these items were available from sources that have already been included in the calculation. In support of his position petitioner has introduced a schedule that includes sources of cash available to petitioner that have been included in the calculations. The total cash available *407 is then reduced for the above two items and the figure agreed to as representing business expenses paid in currency during these years. The net result is positive for each year except 1966, but the total net result for the three years (1964, 1965 and 1966) reflects a cash surplus. Respondent objects to this schedule claiming that it is a mere projection of what could have happened and does not consider other sources of available cash, i.e. cash sales of goods. Respondent also asserts that petitioner has the burden of proof with respect to this issue also and that petitioner has not met it. We agree with respondent and hold that these items should be included as gross business receipts. We also note that despite the cash nature of petitioner's business almost all of the deposits made to the checking account constituted checks. Petitioner has shown that he frequently cashed checks for his customers, but we cannot believe that this practice, along with the cash used to pay business expenses and those items accounted for by the petitioner in his schedule, accounts for all of the cash generated by the business. We believe that the inclusion of these items as gross receipts does not represent *408 a duplication and that respondent has properly included them in his reconstruction of petitioner's gross business income. Having considered the nature and effect of the items that constitute respondent's reconstruction of petitioner's income for the years in issue, we now must determine whether any part of the underpayment for each year was due to fraud on the part of petitioner. If so, petitioner will be liable for the penalty imposed by section 6653(b). The issue of fraud is one of fact to be determined upon a consideration of the entire record. William G. Stratton,54 T.C. 255 (1970). The burden of proving fraud is placed upon respondent by section 7454(a). Fraud is never presumed. It must be affirmatively established by clear and convincing evidence. Anson Beaver,55 T.C. 85 (1970); Rule 142, Tax Court Rules of Practice and Procedure.Direct evidence of fraudulent intent is seldom available and whether it exists must be determined from the conduct of the taxpayer and the surrounding circumstances. Fraud must be proved for each year, and proof of fraud for one year will not sustain respondent's burden of proving fraud in another year. Tsuneo Otsuki,53 T.C. 96 (1969), W. A. Shaw,27 T.C. 561 (1956), *409 affd. 252 F. 2d 681 (6th Cir. 1958). At the outset we note that petitioner has not objected to the method used by respondent to reconstruct his income. He has agreed that his gross business receipts were consistently and materially larger than those originally reported. He also has conceded that at best his net business income was greater than that originally reported on his individual and partnership returns. These figures are as follows: Originally
Petitioner's [7] *410 Year
Reported [6]
Present Calculation
1963
$ 5,010.38
$ 17,674
1964
5,862.59
21,360
1965
7,398.16
15,075
1966
8,647.00
17,262 The figures in the latter column come from a schedule prepared by petitioner that begins with the agreed to amounts for gross receipts and then estimates expenses based on the information developed from the study of the period 1967 through 1973. Included in this estimation is a 70.14 percent figure for cost of goods sold. Furthermore, the final figures for petitioner's net income will be higher because, as noted previously, we have determined that petitioner is only entitled to a 40 percent figure for the unidentified expenses. It is clear that petitioner has consistently and materially understated his income. "Such a pattern of omission or understatement of income for * * * [four] consecutive years, while not conclusive, is strong evidence of an attempt to defraud the Government". Tsuneo Otsuki,supra, at 107. There are also other indicia of fraud that span the years in issue. Although petitioner kept books and records to reflect his business activity, it is clear that they were not complete. For each year there were a substantial total, in number and amount, of debits to the checking account that could not be identified. For 1963 petitioner could not produce any of *411 the supporting detail and his explanation was not persuasive. Inadequate and missing records are an indication of fraud. Lawrence Sunbrock,48 T.C. 55 (1967). As discussed previously, despite the cash nature of petitioner's business, almost all of his deposits to the checking account constituted checks. This was an important factor in our determination that those items paid in currency--Carl's distributive share of the partnership income and petitioner's personal expenses--should be included as additional business receipts. Also during each year petitioner cashed checks, the total of which was not included as gross business receipts. We believe the consistent non-inclusion of these items is a further indication of fraud. An additional indication of fraud for 1964 is the fact the petitioner pled guilty to filing a false partnership return for that year, a violation of section 7206(1). Respondent has argued that this factor should collaterally estop petitioner from contesting the fraud penalty for that year. Without passing on that issue, we nevertheless believe it is a factor that deserves consideration. Finally in 1965 and 1966 petitioner received rental income on property not owned *412 by W&L which was not reported on his individual tax return. We believe that respondent has met his burden of proof with respect to each year and that the penalty imposed by section 6653(b) should be levied. We do not believe this conclusion is inconsistent with our finding that a portion of the unidentified debits to the checking account should be allowed as deductions. Even considering this factor, petitioner has consistently understated his income, maintained incomplete books and records, and excluded receipts that clearly should have been reported. Petitioner claims that he is a man without much formal education and unskilled in accounting practices. Despite these factors, petitioner appeared throughout his testimony to be a capable small businessman who is fully aware of his responsibilities of completely reporting his business activity to the government. At trial he indicated that he was aware that an incomplete tax return would result in an inaccurate tax result and we believe that he was aware of the relevance of those items which were not reported. Decision will be entered under Rule 155.
Footnotes
1. All Code references are to the Internal Revenue Code of 1954, as amended.↩
2. This figure is $ 580 more than the amount in respondent's original determination. Respondent only included $ 1,100 as rental income in arriving at total deposits whereas the parties subsequently agreed that this figure should, be $ 1,680. ↩
3. This description and the accompanying amount were included in respondent's original calculations that were a part of the statutory notice petitioner received. Petitioner has not objected to this figure and we assume that he has conceded that it represents additional gross business receipts of W&L. ↩
4. The total expenses allowed in 1964, 1965, and 1966 are $ 3,615.37 more than, $ 19.80 less than, and $ 297.74 less than, respectively, the amounts in respondent's original determination. These differences are due to mathematical errors incurred during the course of the audit in computing the figure for cost of goods sold and business expenses.↩
5. During this period petitioner changed from a calendar year accounting period to a fiscal year ending on September 30.↩
7. These figures apparently reflect W&L's net income before distribution of Carl's distributive share. Petitioner also introduced another schedule using the estimated figure for cost of goods sold and actual expenses reported during the years in issue. This method produces even higher figures for net income for each year.
6. These figures include the vehicle franchise income earned by petitioner in 1963, 1964, 1965 and 1966 of $ 1,279.05, $ 1,292.75, $ 924.32, $ 848, respectively, which are apparently not included in the latter column, and for 1964 through 1966 represent W&L's net income before distribution of Carl's distributive share. ↩