L. E. & ANNIE C. RIORDAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
RIORDAN v. COMMISSIONER
Docket No. 8029-76.
United States Tax Court
1978 Tax Ct. Memo LEXIS 320; 37 T.C.M. (CCH) 939; May 30, 1978, Filed L. E. Riordan, pro se. John W. Dierker, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined the following deficiencies in petitioner's income tax and additions to tax for 1971, 1972 and 1973: Sec. 6653(a) [1] Year
Deficiency
Addition to Tax
1971
$1,827.39
$ 91.37
1972
1,552.54
77.63
1973
2,963.70
174.65
*321 The issues remaining for decision are: 1. Whether respondent correctly determined petitioners' income and deductions for 1971, specifically: a. Whether $1,200 deposited in petitioners' checking account constitutes unreported income; b. Whether petitioners' cost of goods sold is in excess of the amount allowed by respondent; c. Whether petitioners are entitled to an interest deduction in excess of the amount allowed by respondent. 2. Whether respondent correctly determined petitioners' income and deductions for 1972, specifically, whether petitioners are entitled to an interest deduction in excess of the amount allowed by respondent. 3. Whether respondent correctly determined petitioners' income and deductions for 1973, specifically: a. Whether petitioners are entitled to a deduction for labor costs in excess of the amount allowed by respondent; b. Whether petitioners are entitled to an interest deduction in excess of the amount allowed by respondent; c. Whether petitioners are entitled to a deduction for property taxes in excess of the amount allowed by respondent. 4. Whether petitioners are liable for additions to tax for negligence for any of the *322 years in issue. FINDINGS OF FACT At the time they filed their petition, L. E. Riordan and Annie C. Riordan resided in Fort Worth, Texas. Annie C. Riordan is a party only by virtue of having filed joint returns with her husband for the years in issue. When we hereafter refer to petitioner, we will be referring to L. E. Riordan. During the years in issue petitioner worked as a farmer, a "horse trader" and a "horseshoer" in the Fort Worth area. At the beginning of 1971 he was a tenant farmer on property in Johnson County, Texas. On February 1, 1971, he purchased the property from its former owner. Petitioner became liable for the interest due on the farm's mortgage as of February 1, 1971. He paid $1,201.25 interest on the mortgage note in 1971. He also became liable for other payments, such as taxes, and took full possession of the property as an owner on February 1, although he did not receive legal title until August 12, 1971. The delay in the transfer of legal title resulted from the need to remove tax liens from the property. On his income tax return for 1971, petitioner claimed depreciation for the barn located at the farm from April 1 through December 31, 1971. *323 In connection with his purchase of the farm, petitioner also assumed and incurred liability for delinquent property taxes on the farm due for periods beginning January 1, 1970. In 1973 he paid all the property tax due on the farm for the preceding years, a total of $413.59. Of this amount, $62.37 was for the 1973 taxes on the farm and the remainder ($351.22) was for the overdue taxes due from January 1, 1970 through December 31, 1972. Another cost of operating the farm was labor. In 1973 petitioner hired Billy Reeves to work as a laborer on the farm. Petitioner paid Mr. Reeves $1,300 in 1973 for services performed during that year. During 1971 petitioner was also active in "horse trading." He reported $2,903 cost of animals sold on his Federal income tax return for 1971. He also listed for purposes of depreciation a basis of $2,340 for other animals. In fact the $2,340 represented additional cost to petitioner of additional animals which he sold in 1971. In 1971 petitioner made deposits in his checking account totalling $18,792.63. One deposit in the amount of $950 represented the proceeds from a bank loan. Another deposit of $1,200 reflected money he withdrew from *324 his savings account; he had received this money that year as an inheritance. On his 1971 income tax return petitioner reported $10,115 available for deposit. This amount included wages net of taxes withheld (earned by petitioner's wife Annie) of $2,804, gross business receipts of $7,217, and a 1970 tax refund of $94. In 1972 petitioner's business required that he borrow additional money. In that year he obtained several loans, the proceeds of which were used entirely for business purposes. On his 1972 income tax return petitioner claimed a business interest deduction of $1,355.18. In fact he paid $602.04 additional interest that year on loans obtained exclusively for business purposes, or a total of $1,957.22 interest in 1972 on loans obtained for business purposes. Similarly, in 1973 petitioner paid interest totaling $1,577.67, all of which was on loans obtained for exclusively business purposes. OPINION For each year in issue respondent recomputed petitioner's income and deductions. The issue confronting us is correctness of these determinations. The questions are factual, and petitioner bears the burden of proving that respondent's determinations are wrong. Welch v. Helvering,290 U.S. 111 (1933); *325 Rule 142(a), Tax Court Rules of Practice and Procedure.
1971
Respondent reconstructed petitioner's income on the basis of the bank deposits/source of funds method. Petitioner did not contest the validity of this method of reconstruction of his income. See Estate of Mason v. Commissioner,64 T.C. 651, 656 (1975). Petitioner has conceded that his bank deposits totaling $18,792.63 exceeded amounts reported as available for deposit of $10,115 by $8,677.63; respondent has conceded that this amount of unreported income should be reduced by $950, which represents the proceeds of a bank loan deposited by petitioner in 1971. The sole point of disagreement between the parties concerns whether this amount should be further reduced by the $1,200 transferred by petitioner from his savings account to his checking account. Respondent contends that petitioner has not established that the $1,200 came from a nontaxable source. Petitioner testified, however, that the $1,200 was an inheritance he received, and he submitted a document to that effect. We found petitioner's testimony on this issue to be credible, and therefore hold that respondent's determination of petitioner's *326 unreported income must be reduced accordingly. The next issue is the amount by which petitioner's income should be reduced for the cost of goods sold. On his return petitioner listed animals on the depreciation schedule having a cost basis of $2,340, and he claimed depreciation for these animals. Apparently this was in error since the $2,340 should have been listed as cost of goods sold. Respondent originally disallowed the claimed depreciation; at trial he conceded that the animals were held for resale, but he asserted at trial and on brief that petitioner has not substantiated the amount he paid for these animals. Petitioner had lost his records concerning the purchase of these animals, but he testified as to their cost and we found this testimony to be credible. Accordingly, we hold that petitioner's cost of goods sold should be increased by $2,340. The next issue is the amount of interest deductible by petitioner in 1971. On his return petitioner claimed an interest deduction of $372, but he has established that in fact he paid $1,201.25 interest with respect to the purchase money note and mortgage on his farm in Johnson County, Texas. Respondent contends that $969.65 of *327 this amount should be disallowed on the grounds that petitioner had no proprietary interest in the farm prior to August 12, 1971. He argues that this amount should be added to petitioner's basis in the property since petitioner was paying someone else's interest obligation. At the core of respondent's position is his contention that petitioner did not purchase the farm until August 12, when he received the legal title. The date on which the sale occurred is essentially a question of fact. There are no hard and fast rules of thumb and no single factor is controlling. Among the factors to be considered are the transfer of legal title and the shift of the benefits and burdens of ownership of the property. Generally, a sale of real property is complete upon the first of these events to occur. Deyoe v. Commissioner,66 T.C. 904, 910 (1976). We have found that petitioner purchased the property as of February 1, 1971. Although the facts on this issue are not clear, we have determined that petitioner assumed the benefits and burdens of ownership of the farm on February 1, 1971. Petitioner testified that he took possession of the farm and assumed liability for all *328 interest, taxes, etc. as of February 1, and this testimony is supported by the agreement dated August 12, which indicates petitioner paid interest from February 1. Petitioner was unable to obtain actual legal title until August, however, due to a cloud upon the title. Nevertheless, the benefits and burdens of ownership passed to petitioner in February, when he became liable for the interest and taxes on the property and when he took possession as an owner. Respondent's contention that petitioner was paying someone else's interest is, therefore, incorrect. Accordingly, petitioner is entitled to an interest deduction of $1,201.25 in 1971. 1972
The sole issue in 1972 is whether petitioner is entitled to deduct $602.04 interest paid in 1972. Respondent concedes that petitioner paid this amount but contends that it was on loans obtained for personal purposes. Petitioner did not itemize his personal deductions in 1972; accordingly, unless the interest was related to his business he would not be entitled to any deduction. See section 1.141-1(a), Income Tax Regs.[2] He testified that these loans were for business purposes (e.g., to buy a pickup truck for use on the farm), and *329 we found this testimony to be credible. Accordingly, we hold that petitioner is entitled to deduct an additional $602.04 interest in 1972. 1973
The first issue is the amount petitioner may deduct for labor in 1973. On his return petitioner claimed he had paid $1,583 for labor; respondent determined that petitioner substantiated only $439 of this amount. At trial petitioner testified that he paid Billy Reeves $1,300 for labor in 1973. We found petitioner's testimony on this issue to be credible, and therefore hold that he paid and is entitled to deduct $1,300 for labor in 1973. The next issue is the amount of interest deductible by petitioner in 1973. Petitioner paid $1,577.67 interest in 1973, but respondent determined that $815.71 of this interest was not paid for business purposes. Petitioner did not itemize his personal deductions in 1973; accordingly, unless the interest was related to his business he would not be entitled to deduct it. He testified that the loans upon which this interest was due were for business purposes (e.g., pickup and tractor), and we found this testimony *330 to be credible. Accordingly, we hold that petitioner is entitled to his claimed interest deduction. The next issue is the amount of property taxes deductible by petitioner in 1973. On his return on Schedule F (Farm Income and Expenses) petitioner claimed he paid property taxes in that year of $147.38. In his statutory notice respondent allowed petitioner a deduction for property taxes paid in the amount of $228.23. At trial petitioner claimed he was entitled to deduct an additional $266.59. In fact he paid a total of $413.59 property tax in 1973, of which $62.37 was for the 1973 taxes on his farm, and the remainder ($351.22) was for overdue taxes on the farm from January 1, 1970 through December 31, 1972. Section 164(d)(1) [3] provides that property tax paid on real property which is sold should be allocated between the buyer and the seller on the basis of the date of sale of the property. In this case, respondent contends that petitioner purchased the property on August 12, 1971. He argues that the property tax attributable to 1970 and the period January 1, 1971 through August 12, 1971, should be added to petitioner's basis. We have found as a fact, however, that petitioner *331 purchased the property on February 1, 1971. Accordingly, as to the $351.22 property tax paid for 1970 through 1972 (respondent concedes that property tax of $62.37 paid for 1973 is deductible by petitioner), 13/36 is allocable to the time prior to petitioner's purchase of the property (January 1, 1970 through January 31, 1971), while the remainder (23/36) is allocable to the time that petitioner owned the property. Thus $126.83 (13/36 X $351.22) is added to petitioner's basis in the property, while $224.39 (23/36 X $351.22) is properly deductible when paid in 1973. *332 The final issue for decision is whether petitioner is liable for additions to tax under section 6653(a) for negligence for any of the years in issue. Section 6653(a) provides for an addition to the tax of 5 percent of the "underpayment" where any part of such underpayment is due to negligence or intentional disregard of the rules and regulations of the Internal Revenue Code. The burden of proof again rests on petitioner to rebut respondent's determination. Bixby v. Commissioner,58 T.C. 757, 791 (1972). In this case, petitioner offered no evidence to explain the discrepancies in his reported income or his many errors in claiming deductions. He has failed to prove that these errors were not caused by his negligence; accordingly, respondent's determination that petitioner is liable for additions to tax under 6653(a) is sustained for all the years in issue. Estate of Mason v. Commissioner,64 T.C. 651, 663 (1975). Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue.↩
2. Section 141 was repealed effective for taxable years beginning after 1976.↩
3. Section 164(d)(1) provided in pertinent part: (d) Apportionment of Taxes on Real Property Between Seller and Purchaser.-- (1) General rule.--For purposes of subsection (a) [deduction of certain taxes including real property taxes], if real property is sold during any real property tax year, then-- (A) so much of the real property tax as is properly allocable to that part of such year which ends on the day before the date of the sale shall be treated as a tax imposed on the seller, and (B) so much of such tax as is properly allocable to that part of such year which begins on the date of the sale shall be treated as a tax imposed on the purchaser.↩