T.C. Memo. 2021-38

UNITED STATES TAX COURT

PURPLE HEART PATIENT CENTER, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24994-15.                    Filed March 29, 2021.

<u>Henry G. Wykowski</u>, <u>Matthew A. Williams</u>, and <u>Rik D. Jeffery</u>, for
petitioner.

<u>Lesley A. Hale</u>, <u>Nicholas R. Rosado</u>, and <u>Audra Dineen</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, <u>Judge</u>:  In a notice of deficiency dated July 24, 2015, respondent

determined the following deficiencies, additions to tax, and penalties:[1]

---

[1] Unless otherwise indicated, all statutory references are to the Internal
(continued...)

[*2]

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|-----------|----------------------------------|----------------------|
| 2010 | $1,488,964 | $372,241 | $297,793 |
| 2011 | 1,268,373 | 317,093 | 253,675 |
| 2012 | 1,981,728 | --- | 396,346 |

After concessions, the issues for decision for the years in issue are whether

Purple Heart Patient Center, Inc. (Purple Heart): (1) was entitled to offset its gross

receipts with any cost of goods sold (COGS), (2) underreported its gross income,

and (3) is liable for the accuracy-related penalty pursuant to section 6662(a).[2]

---

[1](...continued)
Revenue Code as in effect at all relevant times and all Rule references are to the
Tax Court Rules of Practice and Procedure.

[2] The notice of deficiency also disallowed all of Purple Heart's business
expense deductions for all three years in issue and determined late-filing additions
to tax under sec. 6651(a)(1) for 2010 and 2011. Purple Heart did not raise the sec.
6651(a)(1) additions to tax as a disputed issue in either its pretrial memorandum or
its posttrial briefs; therefore we deem this issue to be abandoned. See Thiessen v.
Commissioner, 146 T.C. 100, 106 (2016); Mendes v. Commissioner, 121 T.C.
308, 312-313 (2003) ("If an argument is not pursued on brief, we may conclude
that it has been abandoned."). In its pretrial memorandum, Purple Heart stated
that application of sec. 280E to all or part of its business expense deductions was a
disputed issue but did not raise that issue in its posttrial briefs. We construe its
silence as one of prudence: recognizing that we have rejected that argument
repeatedly, and would do so again here, Purple Heart does not try to tilt at that lost
cause again. Respondent argues in his brief, and we likewise conclude, that sec.
280E applies to Purple Heart's business expense deductions, including its "health
counseling services", and we reject any argument otherwise on the same basis as
we have in prior opinions. See, e.g., Patients Mut. Assistance Collective Corp. v.

(continued...)

**[*3]**                                    FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts are incorporated in our findings by this reference. Purple Heart's principal place of business at all relevant times, including when the petition was filed, was in Oakland, California.

I.  Purple Heart and Keith Stephenson

A.  Background

Purple Heart is a California nonprofit mutual benefit corporation with members, rather than shareholders, which is treated as a C corporation for Federal tax purposes. Keith Stephenson organized Purple Heart in 2006 and obtained a license from the City of Oakland to operate a medical cannabis retail dispensary under California law.[3] During the years in issue he served as Purple Heart's sole director and received wages that he reported on Forms W-2, Wage and Tax Statement.

---

[2](...continued)
Commissioner (Patients Mut.), 151 T.C. 176, 198-204 (2018).

[3] Cannabis also is known as marijuana. Dispensing medical marijuana, while legal in California (among other States), is illegal under Federal law. See Olive v. Commissioner, 139 T.C. 19, 39 (2012), aff'd, 792 F.3d 1146 (9th Cir. 2015).

[*4]   Mr. Stephenson has suffered from a chronic condition since his youth and found relief by using medical cannabis.  His experience with medical cannabis inspired him to found Purple Heart and share with its members how cannabis changed his life and could improve theirs.  Aside from operating Purple Heart Mr. Stephenson also has served as a member of several cannabis-related committees and taught as an adjunct professor at Oaksterdam University, the first cannabis-focused school in America.  He also has been interviewed by several national publications about his groundbreaking role as an African-American operator of a cannabis dispensary.

B.  Business Operations and Practices

Purple Heart did not cultivate its own cannabis plants; rather it acquired cannabis-containing products from its members, processed them, and dispensed them in various forms to other members via a "closed-loop" or "closed-circuit" system.  We described this type of closed system in detail in Alt. Health Care Advocates v. Commissioner, 151 T.C. 225, 230 (2018).  Purple Heart's system was similar in all material respects.

Medical cannabis accounted for most of Purple Heart's sales during the years in issue, but it also sold noncannabis items.  Specifically, it sold items to use with cannabis, such as rolling papers and pipes; branded apparel, such as clothing;

**[\*5]** and coffee mugs. Noncannabis items accounted for approximately 3% of Purple Heart's gross receipts for each year in issue.

Purple Heart also offered free services as part of its medical cannabis dispensary business. These services, which it called "health counseling" or "alternative health" services, included assisting its members in selecting cannabis products and understanding various aspects of the cannabis "lifestyle". Purple Heart's complimentary services did not include counseling by any licensed medical professionals or therapists.

Purple Heart purchased all of its inventory with cash,[4] and its members purchased cannabis with cash; they could not use checks or credit cards. It did not deposit all of its cash from its sales into bank accounts. Purple Heart used cash registers to record cannabis purchases and sales and noncannabis sales and then used the tapes that those cash registers produced (Z-tapes) to log purchases and sales in a general ledger. Mr. Stephenson reviewed the general ledger each week to ensure that all purchases and sales were properly recorded.

---

[4] The parties stipulated that Purple Heart also used a credit card. Because it did not have its own credit card, Mr. Stephenson used his credit card for purchases and Purple Heart reimbursed him.

**[*6]** Purple Heart did not preserve the general ledger, Z-tapes, or any other source documents for any of the years in issue. Mr. Stephenson shredded the Z-tapes after Purple Heart paid its California State sales and use taxes each quarter and the general ledger and source documents after it submitted its Federal tax return each year. Mr. Stephenson understood that he risked criminal prosecution and asset forfeiture even without those records, but he feared that the records might be used in any prosecution and result in a lengthy mandatory minimum sentence.

## II. Purple Heart's Federal Tax Returns

For each year in issue Purple Heart filed Form 1120, U.S. Corporation Income Tax Return, on a fiscal year basis (ending June 30). Mr. Stephenson was responsible for Purple Heart's tax reporting and signed its returns.

Hank Levy, a certified public accountant, prepared Purple Heart's Forms 1120. Purple Heart provided Mr. Levy a QuickBooks file for its 2010 return and a PDF file of its financial statements for its 2011 and 2012 returns. It did not provide Mr. Levy with any source documents for its sales or purchases.[5] Mr. Levy

---

[5] Purple Heart provided Mr. Levy source documents for some of its deductions, such as rent and armed security payments, and information about expenses it labeled "health counseling services" to help him determine which

(continued...)

**[*7]** checked the records Purple Heart did provide to determine whether any of the sales or purchases appeared to be inaccurate. He returned the records to Purple Heart after he completed each tax return, and those were among the records that Mr. Stephenson shredded after the returns were submitted.

A. 2010

Purple Heart did not request an extension of time to file its 2010 Form 1120 and filed the return late, on August 30, 2012. It reported $4,370,480 of gross receipts and $2,628,027 of COGS for a gross profit of $1,742,453. It offset this gross profit with deductions totaling $1,574,911 for total taxable income of $167,542.

Purple Heart computed its 2010 COGS by adding together its beginning inventory ($48,259), purchases ($2,432,244), and other costs ($242,157), and subtracting its ending inventory ($94,633).[6] Its purchases made up 56% of its

---

[5](...continued)
deductions sec. 280E disallowed.

[6] Purple Heart's proposed findings of fact in its opening brief asked us to find that its COGS was equal to its purchases for each year in issue. We therefore assume that it no longer argues that the other costs should be included in the calculation.

[*8] gross receipts before accounting for its beginning and ending inventory and 55% after accounting for its beginning and ending inventory.

Purple Heart's 2010 Form 1120 did not list a business activity. An attached Form 8275, Disclosure Statement, cited Olive v. Commissioner, 139 T.C. 19 (2012), aff'd, 792 F.3d 1146 (9th Cir. 2015), and stated in the "Detailed Explanation" section that

> IRC Section 280E applies to trafficking controlled substances. The taxpayer provides health counseling services to it's [sic] patients, which are deductible under the CHAMP case which allows for an allocation between health services and trafficking. The above amounts in column (f) * * * [of Form 8275] constitute the below the line counseling and health expenses. Non-deductible expenses under IRC Sec. 280E have not been included in the amount in column (f).

In column (f) of Form 8275 Purple Heart attributed $1,574,911 to expenses for "health counseling services".

B. 2011

Purple Heart received an extension of time to March 15, 2012, to file its 2011 Form 1120 but filed the return late, on April 29, 2013. It reported $3,470,993 of gross receipts and $1,857,603 of COGS for a gross profit of $1,613,390. It offset this profit with deductions totaling $1,545,058 for total taxable income of $68,350.

[*9]   Purple Heart computed its 2011 COGS by adding together its beginning inventory ($292,413), purchases ($1,787,471), and other costs ($164,771), and subtracting its ending inventory ($387,052).  Its purchases made up 51% of its gross receipts before accounting for its beginning and ending inventory and 49% after accounting for its beginning and ending inventory.  Its 2011 Form 1120 included a footnote stating that "BEGININNING [sic] BALANCE SHEET INCLUDES AMOUNTS CORRECTED SINCE FILING OF 2009 FORM 1120."

Purple Heart's 2011 Form 1120 listed "Alternative Health Services" as its business activity.  An attached Form 8275 cited Olive and included the same disclosure statement in the "Detailed Explanation" section as for 2010.  It attributed $1,545,058 in column (f) to expenses for "health counseling services".

C.  2012

Purple Heart received an extension of time to file its 2012 Form 1120 and timely filed it on February 15, 2013.  It reported $5,457,193 of gross receipts and $3,969,956 of COGS for a gross profit of $1,487,237.  It offset this profit with deductions totaling $1,377,386 for total taxable income of $109,853.

Purple Heart computed its 2012 COGS by adding together its beginning inventory ($387,052), purchases ($3,807,679), additional section 263A costs ($2,730), and other costs ($159,609), and subtracting its ending inventory

**[*10]** ($387,114). Its purchases made up 70% of its gross receipts before and after accounting for its beginning and ending inventory.

Like its 2011 Form 1120, Purple Heart's 2012 Form 1120 listed "Alternative Health Services" as its business activity and attached a Form 8275 that cited <u>Olive</u> and included the same disclosure statement in the "Detailed Explanation" section. It attributed $1,377,368 in column (f) to expenses for "health counseling services".

III. <u>Respondent's Examination and Determinations</u>

During respondent's audit of Purple Heart's tax returns for the years in issue,[7] Purple Heart was unable to provide the examining agent any books or records. He therefore performed a bank deposits and cash expenditures analysis.

To perform the bank deposits part of the analysis, the examining agent reviewed Purple Heart's bank records and determined its gross deposits by using the beginning balance for the first month of the tax year, the monthly deposited amounts, the monthly withdrawal amounts, and the ending balance for the last month of the tax year. He identified and subtracted nontaxable items, such as

---

[7] Respondent also audited Purple Heart's 2015 and 2016 tax returns and issued a notice of deficiency for both of those years. Those years are before the Court at docket No. 7001-19.

[*11] refunds, transfers, and canceled checks, to determine Purple Heart's net deposits.  He determined that Purple Heart had net deposits of $2,089,977, $1,978,572, and $2,097,676 for the years in issue, respectively.

Purple Heart did not deposit all of its cash into bank accounts. Consequently, the examining agent performed the cash expenditures part of his analysis by adding the purchases Purple Heart reported on each of its Forms 1120 for the years in issue for computing COGS to its net deposits to determine yearly gross receipts.  He determined that Purple Heart's corrected gross receipts, $4,522,221, $3,766,061, and $5,905,357 for the years in issue, respectively, resulted in unreported income of $151,741, $295,050, and $448,162, respectively.

Respondent also disallowed all amounts that Purple Heart claimed as COGS and business expense deductions for the years in issue.  The notice of deficiency states that Purple Heart could not offset any of these COGS or deduct any of these expenses from its income because it failed to substantiate them.  The notice further explains that section 280E "disallow[ed] all deductions or credits paid or incurred during the taxable year in * * * [operating a medical cannabis dispensary]."  It also states that it disallowed a portion of Purple Heart's COGS "because of the change to * * * [Purple Heart's] ending inventory."

**[\*12]** The examining agent also determined section 6662(a) and (b)(1) and (2) underpayment penalties for negligence and/or a substantial understatement of income tax for each year in issue. The record includes a Civil Penalty Approval Form, dated March 13, 2015, that was prepared by the examining agent and lists the three years in issue. It bears an electronic signature, dated March 19, 2015, from the acting group manager and agent's immediate supervisor, Ena Eberhart, approving the penalties under section 6662 for substantial understatements and/or negligence. Respondent issued the 30-day letter asserting these penalties on March 19, 2015.

## OPINION

### I. Burden of Proof

Ordinarily, the burden of proof in cases before the Court is on the taxpayer. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 7491(a)(1), "[i]f, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue." See Higbee v. Commissioner, 116 T.C. 438, 442 (2001). Purple Heart makes no argument and the record does not

[*13] show that it introduced evidence to shift the burden of proof in this manner and therefore it generally bears the burden of proof.

II. Evidentiary Issues

Before we turn to our analysis, we must address the admissibility of expert testimony by Anthony Barr, who was offered by Purple Heart as an expert witness. Respondent filed a motion in limine to exclude Mr. Barr's report and testimony, which Purple Heart opposed. We held a hearing on respondent's motion at trial, at which time the parties examined Mr. Barr on his qualifications and the preparation of his report.

A. Background

Purple Heart offered Mr. Barr as an expert in tax and accounting matters relating to cannabis dispensaries to assist the Court in applying the Cohan rule to determine Purple Heart's COGS, citing in support Olive v. Commissioner, 139 T.C. at 34-35. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930) (holding that the Court may estimate the amount of deductible expenses if there is a reasonable basis for making an estimate).

Mr. Barr's report consists of three pages and an appendix. He first recites his assignment, which he frames as "an opinion on the average Cost of Goods Sold

[*14] of Cannabis Dispensaries for the years 2010 through 2012." He explains that his opinion is based on his accounting firm's "historical knowledge of medical cannabis dispensaries" under California law. He states his belief that his firm prepared more returns (which he estimates to be 75 per year on average) for cannabis dispensaries than any other firm nationally and, therefore, it has the best data set on COGS for cannabis dispensaries. The report recites additional details regarding Mr. Barr's education and relevant work experience, the work done by his firm and a former partner (Mr. Levy), and his compensation.

The report explains that Mr. Barr reviewed and relied on 99 tax returns of medical cannabis dispensaries prepared by his former partner. It lays out the average COGS claimed on the returns per year from 2010 through 2012 as a percent of revenue and compares those figures to the percent claimed by Purple Heart each year. The report concludes that "the Cost of Goods Sold reported on * * * [Purple Heart's] tax return[] for * * * [each year in issue] represent[s] typical and reasonable amounts when compared to other California medical cannabis dispensaries." A footnote states that no returns are attached to the report.[8] The

---

[8] It states: "IRC 7216 [p]rohibits disclosure of confidential return information except in certain circumstances. Even when allowable, the information must be in aggregate form and include information from at least 10 returns and no individual client information may be identifiable."

[*15] only appendix to the report breaks down the returns he reviewed and provides average data for them in the following categories: percentage of COGS to revenue, total revenue, beginning inventory, purchases, ending inventory, and COGS.

At trial Mr. Barr explained that his firm provided bookkeeping support for some of the taxpayers whose returns it prepared. His firm, however, did not participate in the audit of any of the returns. And he did not prepare or assist in the preparation of Purple Heart's returns or provide it bookkeeping services although he assisted in return preparation and bookkeeping for some of the taxpayers whose returns he reviewed.

In preparing his report Mr. Barr did not review the underlying books and records or any other documentation for Purple Heart's returns or the 99 returns he reviewed. He did not take any steps to verify that the COGS reported on the returns reflected the COGS to which the taxpayers were entitled. Rather he relied on the numbers reported on the returns.

B. <u>Analysis</u>

Tax Court proceedings are conducted in accordance with the Federal Rules of Evidence (Fed. R. Evid.). <u>See</u> sec. 7453; Rule 143(a). Fed. R. Evid. 702 and 703 govern testimony by expert witnesses. Fed. R. Evid. 702 provides that a

**[\*16]** witness who is "qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if his testimony will help the trier of fact and the following conditions are met: (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case.

In this Court, a party who calls an expert witness must cause that witness to prepare a written report, which is served on the opposing party and lodged with the Court before trial. See Rule 143(g)(1). If the expert is qualified, his report is "received in evidence as the direct testimony of the expert witness." Id. subpara. (2).

Because the written report serves as the direct testimony of the expert witness, the report must comply with the requirements for expert testimony set forth in Fed. R. Evid. 702. Rule 143(g)(1) accordingly requires that an expert witness report "shall contain" (among other things) the following: "(A) a complete statement of all opinions the witness expresses and the basis and reasons for them; (B) the facts or data considered by the witness in forming * * * [his opinions]; [and] (C) any exhibits used to summarize or support * * * [his opinions]."

[*17] Testimony based on scientific, technical, or other specialized knowledge is subject to the Court's gatekeeping function, which forecloses expert testimony that does not "rest[] on a reliable foundation" or is not "relevant to the task at hand." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993); see Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999) (extending the principles of Daubert to all expert testimony). "In exercising this function, trial judges have 'considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" Santa Monica Pictures, LLC v. Commissioner, T.C. Memo. 2005-104, 2005 WL 1111792, at *112 (quoting Kumho Tire Co., 526 U.S. at 152); see Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 85 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). The Court of Appeals for the Ninth Circuit, to which an appeal of this case would lie under section 7482, reviews the trial court's exclusion of testimony under Fed. R. Evid. 702 and Daubert for abuse of discretion. See Murray v. S. Route Maritime SA, 870 F.3d 915, 923 (9th Cir. 2017) (also noting that "[b]ecause of the fluid and contextual nature of the * * * [gatekeeping] inquiry" trial courts are "vested with 'broad latitude' to 'decid[e] how to test an expert's reliability' and 'whether or not [an] expert's relevant testimony is reliable'" (quoting Kumho Tire Co., 526 U.S. at 152-153)); see also Golsen v. Commissioner, 54 T.C. 742, 757 (1970) (holding

**[\*18]** that we apply "a Court of Appeals decision which is squarely in point where appeal from our decision lies to that Court of Appeals and to that court alone"), aff'd, 445 F.2d 985 (10th Cir. 1971).

Under the Federal Rules of Evidence, a witness can be qualified as an expert by experience alone. Fed. R. Evid. 702 provides that a witness who is qualified as an expert by experience may testify in the form of an opinion if specified conditions are met. Those conditions are that the testimony "is based on sufficient facts or data; * * * is the product of reliable principles and methods;" and reflects the reliable application of those principles and methods to the facts of the case. While an expert can be qualified on the basis of his experience, he cannot cite his experience as the sole basis for his opinion. He must show his work, that is, the data he considered and the methodology he applied to produce his results. See Feinberg v. Commissioner, T.C. Memo. 2017-211, at \*9 (excluding appraisal testimony where expert did not provide sufficient data to show that "the opinions expressed are based on anything other than his own conjecture"), aff'd, 916 F.3d 1330 (10th Cir. 2019); Giles v. Commissioner, T.C. Memo. 2006-15, 2006 WL 237503, at \*14 (rejecting appraisal testimony where expert failed to explain the nature of her methodology and the reasons for her conclusions).

[*19] In Feinberg v. Commissioner, at *9-*10, we excluded the expert report of an accountant that the taxpayer offered to establish the amount of COGS for a cannabis dispensary. We concluded that the report was

> an attempt to present reconstructed income tax returns as evidence of
> * * * [the taxpayer's] correct tax liabilities. The report is not based
> on personal knowledge of * * * [the cannabis dispensary's] business.
> To determine the correct COGS for * * * [the cannabis dispensary],
> substantiation of * * * [the dispensary's] expenses is necessary. A
> reconstructed income tax return based on industry averages does not
> take the place of substantiation and does not help determine a fact in
> issue.

Id. at *9. We went on to state: "By relying on returns that * * * [the expert] and his firm prepared for other businesses, the * * * [expert] report provides the Court with legal conclusions as to which types of expenses may be treated as COGS." Id. at *10. We rejected that testimony as unhelpful to the trier of fact. Id.

In Skolnick v. Commissioner, T.C. Memo. 2019-64, at *13, we rejected expert testimony from a horse appraiser on similar grounds, stating that the appraiser "must still explain how he got to his results, which requires that he show the data he considered, the methodology he applied, and the manner in which he applied his methodology to reach his valuation outcomes." We further explained that "[w]ithout that information, the Court has no means of examining whether the

[*20] report 'rests on a reliable foundation and is relevant to the task at hand.'" Id. (quoting Daubert, 509 U.S. at 597).

Respondent argues that Mr. Barr's report fails to satisfy the requirements set forth in Rule 143(g), primarily because his report does not provide the underlying factual support for his conclusions as required by Rule 143(g)(1)(B). Respondent also argues that the report is not based on sufficient facts and data, as required by Fed. R. Evid. 702(b), and is not a product of reliable principles and methods, as required by Fed. R. Evid. 702(c). Purple Heart counters that the report is necessary because respondent has unreasonably disallowed all of its COGS and Mr. Barr's report and testimony will be helpful to the Court in estimating the COGS under the Cohan rule as was done in Olive.

We conclude that Mr. Barr's report does not satisfy the requirements of the Federal Rules of Evidence or this Court's Rules. His report does not set forth any "facts or data" on which he relied. See Fed. R. Evid. 702(b); Rule 143(g)(1)(B). Notwithstanding Mr. Barr's concerns regarding the disclosure of the 99 returns on which he relied, his failure to provide those returns to respondent has caused undue prejudice by "significantly impairing the opposing party's ability to cross-examine the expert witness" and "by denying the opposing party the reasonable opportunity to obtain evidence in rebuttal to the expert witness's testimony." Rule

**[*21]** 143(g)(2); see In re TMI Litig., 193 F.3d 613, 722 (3d Cir. 1999) (upholding the exclusion of expert testimony where "the substance of the experts' reports" was disclosed too late for the opposing party to prepare cross-examination); Boltar, LLC v. Commissioner, 136 T.C. 326, 337-340 (2011) (declining to permit a late-filed supplement to an incomplete expert report because it "would prejudice respondent in preparing rebuttal and would undermine the purpose of pretrial exchange of expert reports").

Moreover, even if we accept Mr. Barr's opinion that the COGS amounts Purple Heart claimed on its returns were within the range claimed on other dispensaries' returns, at most his testimony would support a finding that the COGS amounts reported on Purple Heart's returns were within the range of amounts reported on other dispensaries' returns. What is missing from the report is any factual support for a finding that the COGS amounts claimed on the 99 tax returns accurately reflected the COGS those taxpayers were entitled to claim. And without the tax returns themselves, respondent could not verify whether any of them had been examined or whether any changes had been determined.

The difficulties encountered by the cannabis industry in documenting expenses do not justify the leap of logic that Purple Heart asks us to take to conclude that the amounts reported on 99 returns accurately reflected the COGS

[*22] for those taxpayers. The report therefore cannot help the Court determine a fact in issue. See Feinberg v. Commissioner, at *9-*10. While Mr. Barr's report does not attempt to reconstruct an income and expense schedule for Purple Heart based on industry averages, his report still requires the Court to accept the COGS reported on the 99 returns as correct. See id. That we cannot and will not do.

We therefore conclude that Mr. Barr's report is not admissible under Fed. R. Evid. 702 because it is not helpful in understanding evidence or in determining a fact in issue. Accordingly, we will grant respondent's motion in limine as to Mr. Barr's testimony and report. See Rule 143(g)(2).

## III. COGS

We begin our analysis with petitioner's claimed COGS offset because that was the focus of the parties' trial and posttrial presentations.

### A. General Principles

All businesses, including cannabis dispensaries, may offset their gross receipts with COGS to compute gross income. See, e.g., New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Olive v. Commissioner, 139 T.C. at 20 n.2; Californians Helping to Alleviate Medical Problems, Inc. v. Commissioner (CHAMP), 128 T.C. 173, 178 n.4 (2007); see also sec. 1.61-3(a), Income Tax

**[\*23]** Regs. As we and other courts have held, section 280E disallows only deductions for a business' expenses and does not preclude COGS. See CHAMP, 128 T.C. at 178 n.4 (citing S. Rept. No. 97-494 (Vol. 1), at 309 (1982), 1982 U.S.C.C.A.N. 781, 1050); see also Doyle v. Mitchell Bros. Co., 247 U.S. 179, 185 (1918) (holding that Congress may tax a reseller only on its gross income, not its gross receipts).

COGS is not a deduction within the meaning of section 162(a) but is subtracted from gross receipts to determine a taxpayer's gross income. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 661 (1987); secs. 1.61-3(a), 1.162-1(a), Income Tax Regs.; see also Max Sobel Wholesale Liquors v. Commissioner, 69 T.C. 477, 485 (1977), aff'd, 630 F.2d 670 (9th Cir. 1980). It is "the costs of acquiring inventory, through either purchase or production", which are generally determined under section 471 and the accompanying regulations. Patients Mut. Assistance Collective Corp. v. Commissioner, 151 T.C. 176, 205 (2018) (citing Reading v. Commissioner, 70 T.C. 730, 733 (1978), aff'd, 614 F.2d 159 (8th Cir. 1980)); secs. 1.471-1, 1.471-3(a) and (b), Income Tax Regs. COGS for a taxable year equals the sum of beginning inventory and purchases (and other acquisition

**[\*24]** or production costs) during the taxable year less ending inventory.[9] See

Huffman v. Commissioner, 126 T.C. 322, 324 (2006), aff'd, 518 F.3d 357 (6th Cir.

2008)); see also Alterman v. Commissioner, T.C. Memo. 2018-83, at \*33 (holding

that taxpayers' method of computing COGS was improper when it considered only

purchase and production costs and did not consider beginning and ending

inventory).

A taxpayer is required to maintain sufficient reliable records to substantiate

its COGS. See sec. 6001; Newman v. Commissioner, T.C. Memo. 2000-345, 2000

WL 1675519, at \*2; sec. 1.6001-1(a), Income Tax Regs.; see also King v.

Commissioner, T.C. Memo. 1994-318, 1994 WL 330613, at \*2 ("[A]ny amount

allowed as cost of goods sold must be substantiated."), aff'd without published

opinion, 69 F.3d 544 (9th Cir. 1995). We have disallowed all or part of COGS

claimed for a tax year when the taxpayer failed to maintain these types of records.

---

[9] Sec. 471 and its regulations also direct taxpayers to sec. 263A for additional rules. See Richmond Patients Grp. v. Commissioner, T.C. Memo. 2020-52, at \*15. That section instructs resellers to include "indirect" inventory costs in its COGS. Sec. 263A(a)(2)(B), (b); see also sec. 1.263A-1(a)(3), (c)(1), (e), Income Tax Regs. It also broadens the definition of indirect costs. See sec. 1.263A-1(e)(3), Income Tax Regs. Sec. 263A, however, allows a taxpayer to include in its COGS only expenses that are otherwise deductible. Sec. 263A(a)(2). Sec. 280E prohibits taxpayers from deducting business expenses under sec. 162. Because Purple Heart's business expense deductions are disallowed by sec. 280E, sec. 263A does not allow it "to capitalize indirect costs [into its COGS] that it wouldn't otherwise be able to deduct." Patients Mut., 151 T.C. at 209.

[*25] <u>See, e.g.</u>, <u>Factor v. Commissioner</u>, 281 F.2d 100, 108, 122 (9th Cir. 1960) (affirming our holding that a taxpayer failed to maintain records sufficient to establish business costs and was precluded from "taking any part of * * * [its business costs] as cost of goods sold"), <u>aff'g</u> T.C. Memo. 1958-94; <u>Chico v. Commissioner</u>, T.C. Memo. 2019-123, at *25 (sustaining the Commissioner's disallowance of all of a taxpayer's claimed COGS for two tax years because the taxpayer did not maintain records of his beginning and ending inventories); <u>Jabari v. Commissioner</u>, T.C. Memo. 2017-238, at *10 (holding that owners of a medical cannabis dispensary were not entitled to COGS greater than the Commissioner allowed because they had failed to document the dispensary's "gross sales or to substantiate any expenses or costs relating to any gross sales").

Under the <u>Cohan</u> rule, however, if a taxpayer is able to demonstrate that he paid or incurred an expense but cannot substantiate the precise amount, we generally may estimate the amount of the expense while "bearing heavily * * * upon the taxpayer whose inexactitude is of his own making." <u>Cohan v. Commissioner</u>, 39 F.2d at 543-544; <u>see also</u> <u>Goldsmith v. Commissioner</u>, 31 T.C. 56, 62 (1958) (applying the <u>Cohan</u> rule to COGS). For the Court to estimate the amount of an expense, there must be some basis upon which an estimate can be made. <u>Norgaard v. Commissioner</u>, 939 F.2d 874, 879 (9th Cir. 1991), <u>aff'g in</u>

[*26] part, rev'g in part T.C. Memo. 1989-390; Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985); see also Cohen v. Commissioner, 266 F.2d 5, 11-12 (9th Cir. 1959) (holding that, even if the Commissioner's determination to disallow all COGS is "harsh and unrealistic", any estimate under Cohan "must be * * * [made] upon the basis of a finding of fact (which may be based upon approximations)"), remanding T.C. Memo. 1957-172. Otherwise an allowance would amount to "unguided largesse." Norgaard v. Commissioner, 939 F.2d at 879 (quoting Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957)).

B. Analysis

Respondent argues that Purple Heart failed to maintain sufficient records to substantiate any of its claimed COGS because Mr. Stephenson intentionally and systematically destroyed Purple Heart's business records. He also argues that Purple Heart failed to reconstruct those records or present other credible evidence to support a rational basis by which we could estimate COGS under Cohan.

Purple Heart argues that it maintained sufficient records to file its tax returns, and Mr. Stephenson's destruction of its records was reasonable because of his fear of Federal prosecution and mandatory minimum sentences during these years soon after cannabis was legalized under California law. Purple Heart also

**[\*27]** argues that its tax returns together with testimony from Mr. Stephenson and Mr. Levy provide a sufficient basis for us to estimate COGS under Cohan.

To resolve this dispute we first must determine whether Purple Heart provided us a sufficient factual basis to estimate COGS under Cohan. We do not have any underlying records of Purple Heart's purchases or sales or its general ledgers because Mr. Stephenson destroyed them. He explained that he did so because of his concerns that they would be used for calculating mandatory minimum sentences if he faced criminal prosecution. He testified convincingly about his concerns, but respondent is correct that Purple Heart identified no case granting a taxpayer leniency in a Cohan analysis because the taxpayer had a reasonable explanation for the lack of substantiation (and we do not reach the question of whether Mr. Stephenson's explanation is reasonable).

We next turn to the evidence that is in the record. The problem here is not new. For example in Chagra v. Commissioner, T.C. Memo. 1991-366, 1991 WL 146896, at \*26, aff'd, 990 F.2d 1250 (2d Cir. 1993), we held that "[a]lthough * * * [the taxpayers] are essentially correct in their argument that they are entitled to reduce income from an illicit activity by the cost of goods sold, they did not present sufficient evidence to substantiate the amount which they claimed." See also Norgaard v. Commissioner, 939 F.2d at 879-880. Tax returns by themselves

[*28] are not evidence to substantiate an amount claimed; they are merely a "statement of * * * [Purple Heart's] claim". Roberts v. Commissioner, 62 T.C. 834, 837 (1974). And we have declined to estimate COGS when we had little more than a taxpayer's self-serving declarations. See Pratt v. Commissioner, T.C. Memo. 2002-279, 2002 WL 31474524, at *5 (sustaining the Commissioner's disallowance of all of a taxpayer's COGS for a tax year because he "did not testify or offer any other evidence" that would allow the Court "to estimate [the taxpayer's COGS] with a degree of reliability"); Snyder v. Commissioner, T.C. Memo. 2001-255, 2001 WL 1150007, at *9 (holding that the taxpayers failed to prove that they were entitled to any COGS because they provided "no basis other than the self-serving figures on * * * [the taxpayer-owned business'] tax returns"); Makspringer v. Commissioner, T.C. Memo. 1994-468, 1994 WL 520346, at *2 (holding that a taxpayer's vague testimony about the cost of its merchandise was not enough to substantiate his claimed COGS).

On the other hand, if no other documentation is available the Court may, but is not obligated to, accept credible testimony to estimate part of a taxpayer's claimed expenses. See, e.g., Arizaga v. Commissioner, T.C. Memo. 2016-57, at *6-*7 (holding that a taxpayer who provided no documentation at trial was entitled to offset receipts with a portion of claimed COGS on the bases of the

[*29] Court's "careful review of the entire record and our evaluation of petitioner's credibility"); see also Watson v. Commissioner, T.C. Memo. 1988-29, 1988 Tax Ct. Memo LEXIS 29, at *19 ("Although not required to do so, we may accept credible testimony of a taxpayer to substantiate deductions when no further documentation is available."). And we previously have estimated COGS under Cohan relying primarily on a taxpayer's credible testimony. See, e.g., Arizaga v. Commissioner, at *6-*7; Riordan v. Commissioner, T.C. Memo. 1978-194, 1978 Tax Ct. Memo LEXIS 320, at *7 (holding that a farmer who credibly testified about the cost of his animals was entitled to his claimed COGS); see also Cheyne v. Commissioner, T.C. Memo. 1977-361, 1977 Tax Ct. Memo LEXIS 80, at *61 (holding that a taxpayer who provided no documentation was entitled to deduct expenses because he had "given credible testimony regarding the expenses").

Neither Mr. Stephenson's nor Mr. Levy's testimony was precise enough to substantiate the amounts of COGS Purple Heart claimed on its tax returns. But Mr. Stephenson's testimony may have been credible enough for us to estimate part of Purple Heart's claimed COGS under Cohan. He testified that Purple Heart marked up the cannabis it sold by 100% and determined the price of its noncannabis products by doubling the wholesale price; both practices would suggest COGS of approximately 50% of its gross receipts. Mr. Stephenson also

[*30] reviewed the general ledger each week to ensure that all of Purple Heart's purchases and sales were properly recorded; and Mr. Levy testified that, before preparing its tax returns each year, he checked the records Purple Heart provided to him to determine whether any of the sales or purchases appeared to be inaccurate. However, Mr. Levy did not review any of the source documents for Purple Heart's sales and purchases; and Mr. Stephenson testified that it was "almost impossible * * * [for Mr. Stephenson] to know everything" happening with Purple Heart's sales and purchases because he "dealt with operations at a higher level".

Against that backdrop we now consider each year in issue.

### 1. 2010

Purple Heart states on its 2010 Form 1120 that its purchases made up 56% of its gross receipts. That is consistent with Mr. Stephenson's testimony suggesting that Purple Heart's COGS was roughly 50% of its gross receipts before accounting for beginning and ending inventory (as we must) in calculating COGS. See Alterman v. Commissioner, at *33. Purple Heart's reported 2010 ending inventory ($94,633) does not match its reported 2011 beginning inventory ($292,413). Mr. Levy was unable to recall why these figures did not match, but the footnote in Purple Heart's 2011 Form 1120 disclosed that its beginning

[*31] balance sheet amounts had been "corrected since filing of 2009 Form 1120", indicating that the figures on its 2010 Form 1120 were not accurate.

Purple Heart argues that, even though there were "definite gaps" in its records, it is "the duty of the Court" to estimate its COGS. We agree that Purple Heart should be entitled to some allowance for COGS for 2010, but we cannot make an estimate without reliable information in the record regarding Purple Heart's inventory. See id. at *33-*37 (explaining how the task of estimating beginning and ending inventories without any information in the record about physical inventories is impossible); Choi v. Commissioner, T.C. Memo. 2002-183, 2002 WL 1765991, at *7 ("Because * * * [the taxpayer] did not account for * * * [his business'] inventory, either at the beginning or at the end of a taxable year, * * * it is not possible to determine * * * [his business'] cost of goods sold[.]"), aff'd, 379 F.3d 638 (9th Cir. 2004); see also Ibidunni v. Commissioner, T.C. Memo. 2016-218, at *51-*52 (holding that a medical cannabis dispensary was not entitled to claim COGS greater than the Commissioner allowed because we could not reliably determine the price or date of purchase for the dispensary's cannabis inventory). Mr. Stephenson's and Mr. Levy's testimony do not resolve the problem of the untrustworthy inventory figures on Purple Heart's 2010 tax return. See Mendes v. Commissioner, 121 T.C. 308, 312 (2003) ("[We have] held

**[*32]** repeatedly that positions taken in a tax return signed by a taxpayer may be treated as admissions.").

Because Mr. Stephenson destroyed all other documents we could use to determine Purple Heart's net sales or inventory, it is impossible for us to estimate any COGS reliably for 2010 under Cohan.  See Petzoldt v. Commissioner, 92 T.C. 661, 698 (1989) (holding that "[w]e would distort income if * * * we allowed * * * [the taxpayer] an expense for cost of goods sold" without the information to determine the taxpayer's net sales or inventory); Olagunju v. Commissioner, T.C. Memo. 2012-119, 2012 WL 1392677, at *12 (holding that the taxpayer was not entitled to any COGS because it failed to provide accurate beginning and ending inventory figures); see also Burnet v. Houston, 283 U.S. 223, 228 (1931) ("The impossibility of proving a material fact upon which the right to relief depends simply leaves the claimant upon whom the burden rests with an unenforceable claim, a misfortune to be borne by him * * * as the result of a failure of proof."). Simply put, Purple Heart has failed to substantiate its COGS for 2010.  See Petzoldt v. Commissioner, 92 T.C. at 698.  We, therefore, will sustain respondent's disallowance of all Purple Heart's claimed COGS for 2010.

**[\*33]**        2. <u>2011</u>

Purple Heart states on its 2011 Form 1120 that its purchases made up 51% of its gross receipts before accounting for inventory and 49% of its gross receipts after accounting for inventory.  These figures generally reflect Mr. Stephenson's testimony suggesting Purple Heart's COGS was roughly 50% of its gross receipts.  Unlike on its 2010 return, Purple Heart disclosed on its 2011 return that it had corrected its balance sheet amounts from previous years and its ending inventory for 2011 matched its beginning inventory for 2012.  Respondent did not challenge Purple Heart's correction or its updated inventory numbers.  Therefore, we find that the 2011 return does not prevent us from being able to estimate COGS under <u>Cohan</u>.  Cf. <u>Alterman v. Commissioner</u>, at \*36-\*37.

When it is possible to estimate COGS, we are charged to use our best judgment to make an appropriate allocation.  See <u>Lollis v. Commissioner</u>, T.C. Memo. 1976-15, 1976 Tax Ct. Memo LEXIS 390, at \*16-\*17 (citing <u>Cohan v. Commissioner</u>, 39 F.2d 540), <u>aff'd</u>, 595 F.2d 1189 (9th Cir. 1979).  We previously have used a taxpayer's testimony of marking up inventory to estimate COGS under <u>Cohan</u>.  See <u>Heinbockel v. Commissioner</u>, T.C. Memo. 2013-125, at \*67 (using the taxpayer's testimony of marking up her inventory by "somewhere between 100% and 120%" to estimate COGS to be 50% of her gross receipts).

**[*34]** After a careful review of the entire record and evaluation of Mr. Stephenson's and Mr. Levy's testimony, we conclude that Purple Heart was entitled to reduce its gross receipts by COGS of 50%, less the $94,639 difference in beginning and ending inventories, in computing its gross income for 2011.

       3. <u>2012</u>

Purple Heart states on its 2012 Form 1120 that its purchases made up approximately 70% of its gross receipts. This figure does not reflect Mr. Stephenson's testimony suggesting Purple Heart's COGS were roughly 50% of its gross receipts. Neither he nor Mr. Levy explained this large difference. <u>See</u> <u>id.</u> As with the 2011 Form 1120, the beginning and ending inventory figures Purple Heart claimed on its 2012 Form 1120 are evident from the return itself, and respondent did not challenge the figures.

Where the evidence of a taxpayer's expenses is fragmentary, but there is a basis for making a finding of fact, the Court may do so, bearing heavily if it chooses on the party whose inexactitude and lapses of proof are of his own making. <u>See</u> <u>Caffery v. Commissioner</u>, T.C. Memo. 1990-498, 1990 WL 134957 (citing <u>Cohan v. Commissioner</u>, 39 F.2d 540); <u>see also</u> <u>Edelson v. Commissioner</u>, 829 F.2d 828, 831 (9th Cir. 1987) ("[A] court should allow * * * [a] taxpayer some deductions if the taxpayer proves he is entitled to the deduction but cannot

[*35] establish the full amount claimed."), aff'g T.C. Memo. 1986-223. After a careful review of the entire record and evaluating Mr. Stephenson's and Mr. Levy's testimony, we will bear heavily against Purple Heart for the inexactitude of its own making and conclude that Purple Heart was entitled to reduce its gross receipts by COGS of 50%, less the $62 difference in beginning and ending inventory, in computing its gross income for 2012.

IV. Unreported Income[10]

Section 61(a) provides that gross income means "all income from whatever source derived". See Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). Taxpayers are responsible for maintaining adequate books and records sufficient to establish their income. See sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

---

[10] Respondent argues that Purple Heart abandoned its arguments on this issue because it failed to address it in its posttrial briefs. Purple Heart, however, raised the issue in its pleadings and at trial, questioning the revenue agent at length. We do not know why it did not address this issue explicitly in its posttrial briefs, but we nonetheless address it because it is so entwined with penalties and COGS. See Brown v. Commissioner, T.C. Memo. 2019-69, at *19-*20; cf. Nicklaus v. Commissioner, 117 T.C. 117, 120 & n.4 (2001) (holding in a collections case that the taxpayers' statement in their posttrial brief that they were "only going to challenge" one procedural issue meant that they had waived the "other arguments and contentions that * * * [the taxpayers] asserted prior to the filing of their brief").

**[\*36]** When a taxpayer fails to maintain adequate books and records, the Commissioner is authorized to compute the taxpayer's income by any method that, in the Commissioner's opinion, clearly reflects income. Sec. 446(b); see also Choi v. Commissioner, 379 F.3d at 639; Petzoldt v. Commissioner, 92 T.C. at 693; sec. 1.446-1(b)(1), Income Tax Regs. The Commissioner may use indirect methods to reconstruct income. Holland v. United States, 348 U.S. 121 (1954); Choi v. Commissioner, 379 F.3d at 640. He is given latitude to determine which method of reconstruction to apply when a taxpayer fails to maintain records; the reconstruction need only be reasonable in the light of all surrounding circumstances and on the basis of "some substantive evidence." See Hardy v. Commissioner, 181 F.3d 1002, 1004-1005 (9th Cir. 1999), aff'g T.C. Memo. 1997-97; Petzoldt v. Commissioner, 92 T.C. at 687; Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970).

Respondent used the bank deposits and cash expenditures method to compute Purple Heart's income. Courts, including the Court of Appeals for the Ninth Circuit, have long sanctioned the use of the bank deposits and cash expenditures method. See Choi v. Commissioner, 379 F.3d at 639-640; Nicholas v. Commissioner, 70 T.C. 1057, 1065 (1978); Kudo v. Commissioner, T.C. Memo. 1998-404, 1998 WL 804716, at \*12, aff'd, 11 F. App'x 864 (9th Cir. 2001).

[*37] The bank deposits method assumes that all money a taxpayer deposited in its bank account during a given period is income, absent an explanation of a nontaxable source for the deposit. DiLeo v. Commissioner, 96 T.C. at 868; see also Welch v. Commissioner, 204 F.3d 1228, 1230 (9th Cir. 2000) ("Deposits in a taxpayer's bank account are prima facie evidence of income, and the taxpayer bears the burden of showing that the deposits were not taxable income[.]"), aff'g T.C. Memo. 1998-121; Clayton v. Commissioner, 102 T.C. 632, 645 (1994) (holding that "the Commissioner is not required to show a likely source of income" when using the bank deposits method for computing unreported income). The cash expenditures method assumes that "the amount by which a taxpayer's expenditures during a taxable year exceed his reported income has taxable origins absent some explanation by the taxpayer." Petzoldt v. Commissioner, 92 T.C. at 694 (citing Burgo v. Commissioner, 69 T.C. 729, 742 (1978)); see also Chagra v. Commissioner, 1991 WL 146896, at *13 (stating that the cash expenditures method "reconstructs income by establishing the amount of purchases of goods and services not attributable to resources on hand at the beginning of the year or to nontaxable receipts during the year"). The bank deposits and cash expenditures method is used by the Commissioner "to prove the existence of omitted or unreported income in circumstances where cash is both deposited into bank

[*38] accounts and spent by the taxpayer." Boone v. Commissioner, T.C. Memo. 1997-471, 1997 WL 633154, at *9, aff'd, 208 F.3d 212 (6th Cir. 2000).

When the Commissioner uses the bank deposits and cash expenditures method, he assumes a special responsibility to be thorough and particular in his investigation and presentation. See Pawar v. Commissioner, T.C. Memo. 2013-257, at *11-*12 (citing United States v. Hall, 650 F.2d 994, 999 (9th Cir. 1981)). The Commissioner must eliminate any nonincome items of which he has knowledge, such as gifts, loans, and transfers between the taxpayer's various bank accounts. DiLeo v. Commissioner, 96 T.C. at 868; see also Bacon v. Commissioner, T.C. Memo. 2000-257, 2000 WL 1146742, at *4 (holding that the only cash expenditures that the Commissioner should include as unreported income are those "that did not come from deposited funds or nontaxable sources"), aff'd without published opinion, 275 F.3d 33 (3d Cir. 2001). He must also "make a further adjustment for the taxpayer's ascertainable business expenses, deductions, and exemptions." Kling v. Commissioner, T.C. Memo. 2001-78, 2001 WL 309060, at *9 (citing Percifield v. United States, 241 F.2d 225 (9th Cir. 1957)). That adjustment includes accounting for a taxpayer's beginning and ending inventory. See, e.g., Goldberg v. Commissioner, T.C. Memo. 1958-187, 1958 WL 840; see also Petzoldt v. Commissioner, 92 T.C. at 694-695 (holding

**[*39]** that the Commissioner's failure to determine a taxpayer's exact beginning and ending net worth is not "necessarily fatal" to his unreported income determination as long as the proof makes clear that the excess income is not attributable to "assets available [to the taxpayer] at the beginning of the relevant period or to nontaxable receipts").

Purple Heart argued at trial that respondent was arbitrary and excessive in relying on its reported purchases to compute gross income while at the same time rejecting those purchases to compute COGS. Respondent countered that Purple Heart failed to provide the necessary information or documents so that he could calculate COGS and that he used the only available information--Purple Heart's admissions on its tax returns--to determine cash expenditures.

We normally do not look behind the notice of deficiency to examine the basis for the Commissioner's determination. Jackson v. Commissioner, 73 T.C. 394, 400 (1979); Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). This Court has applied a limited exception to this general rule in cases involving unreported income where the Commissioner fails to introduce any substantive evidence but rests on the presumption of correctness afforded the notice of deficiency and the taxpayer challenges the notice on the grounds that it was arbitrary and excessive. See Helvering v. Taylor, 293 U.S. 507 (1935).

[*40] In cases involving failure to report income the Court of Appeals for the Ninth Circuit has held that the Commissioner must introduce some substantive evidence linking the taxpayer to an alleged income-producing activity or demonstrate that the taxpayer actually received unreported income before the presumption of correctness attaches to the deficiency determination. Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985); Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982); see also Portillo v. Commissioner, 932 F.2d 1128, 1133 (5th Cir. 1991) ("[A] court need not give effect to the presumption of correctness in a case involving unreported income if the Commissioner cannot present some predicate evidence supporting its determination."), aff'g in part, rev'g and remanding in part T.C. Memo. 1990-68. The requisite evidentiary foundation is minimal and need not include direct evidence. See Rapp v. Commissioner, 774 F.2d at 935; Weimerskirch v. Commissioner, 596 F.2d 358, 360-362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977); see also Hardy v. Commissioner, 181 F.3d at 1004-1005 (holding that third-party information returns were enough to establish the evidentiary foundation for the presumption of correctness to attach). If the Commissioner carries his initial burden, the taxpayer has "the burden * * * to rebut the presumption by establishing by a preponderance of the evidence that the deficiency determination is arbitrary or erroneous." Rapp

[*41] v. Commissioner, 774 F.2d at 935; see also Hardy v. Commissioner, 181 F.3d at 1004-1005.

Here, the parties do not dispute that Purple Heart purchased and sold cannabis as an income-producing activity during each year in issue. However, respondent calculated Purple Heart's gross income for each year by adding the cash purchases it reported on its tax return to its taxable bank deposits. At the same time, respondent questioned the reliability of Purple Heart's 2010 Form 1120 and we rejected the return as a basis for computing COGS. It is not "necessarily inconsistent" to rely on a document prepared by a taxpayer to determine the amounts of its gross receipts and refuse to rely on it to determine the amount of its COGS. See Olive v. Commissioner, 139 T.C. at 34. And statements a taxpayer makes on its signed tax return "are considered binding admissions unless there is 'cogent evidence' that indicates such statements are wrong." Kornhauser v. Commissioner, T.C. Memo. 2013-230, at *5, aff'd, 632 F. App'x 421 (9th Cir. 2016).

Purple Heart reported on its 2010 Form 1120 that it had $2,432,244 of cash purchases in 2010 and did not provide any evidence rebutting respondent's 2010 unreported income determination or attack in its posttrial briefs respondent's reliance on the cash purchases Purple Heart reported on its tax return. The Court

[*42] of Appeals for the Ninth Circuit has held that the Commissioner satisfies his minimal evidentiary burden when the taxpayer does "not attack the presumption of correctness of the Commissioner's [unreported income] determination on the ground that there was no linking of the * * * [taxpayers] with income producing activity." Rapp v. Commissioner, 774 F.2d at 935. Therefore, we conclude on these narrow facts that the connection between Purple Heart and the income-producing activity "is sufficiently acknowledged to permit the presumption of correctness to attach to the Commissioner's determination" for 2010. See id. As Purple Heart did not provide any evidence to rebut this presumption, we sustain respondent's inclusion of $151,741 in Purple Heart's 2010 gross income. We similarly conclude that Purple Heart's 2011 and 2012 tax returns provide the necessary evidentiary foundation for respondent's determination of Purple Heart's cash expenditures and income for 2011 and 2012. See Hardy v. Commissioner, 181 F.3d at 1005; Petzoldt v. Commissioner, 92 T.C. at 696-697.

Purple Heart did not provide any evidence to rebut this presumption, and the issues it identified with respondent's method were caused by Mr. Stephenson's destruction of Purple Heart's records. Although "the absence of adequate tax records does not give respondent carte blanche for imposing Draconian absolutes, such absence does weaken any critique of respondent's methodology." Petzoldt v.

[*43] Commissioner, 92 T.C. at 693 (citing Webb v. Commissioner, 394 F.2d 366, 373 (5th Cir. 1968), aff'g T.C. Memo. 1966-81).  We therefore find that Purple Heart failed to prove any error as to respondent's unreported income determinations for 2011 and 2012.  Accordingly, we sustain respondent's inclusion of $295,050 and $448,162 in Purple Heart's 2011 and 2012 gross income, respectively.

V.  Section 6662(a) Penalties

Section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20% of the portion of an underpayment of tax required to be shown on the return that is attributable to "[n]egligence or disregard of rules or regulations" or a "substantial understatement of income tax."  Negligence includes "any failure to make a reasonable attempt to comply with the provisions of this title".  Sec. 6662(c); see also Allen v. Commissioner, 92 T.C. 1, 12 (1989) (repeating our definition of negligence as "the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances"), aff'd, 925 F.2d 348 (9th Cir. 1991).  With respect to corporations, an understatement of income tax is

[*44] "substantial" if it exceeds the greater of 10% of the tax required to be shown on the return or $10,000 (or if it exceeds $10,000,000). Sec. 6662(d)(1)(B).[11]

A section 6662(b)(2) penalty may be reduced or eliminated if the taxpayer adequately disclosed the position attributable to a portion (or all) of the underpayment and had a reasonable basis for it. Sec. 6662(d)(2)(B)(ii); see Campbell v. Commissioner, 134 T.C. 20, 30 (2010), aff'd, 658 F.3d 1255 (11th Cir. 2011); secs. 1.6662-3(a), 1.6662-4(a), Income Tax Regs. Disclosure generally must be made on a Form 8275 unless an applicable revenue procedure permits otherwise. Secs. 1.6662-3(c), 1.6662-4(f), Income Tax Regs.; see Campbell v. Commissioner, 134 T.C. at 31. Reasonable basis is a relatively high standard of reporting; taxpayers must have a position that is more than merely arguable. Sec. 1.6662-3(b)(3), Income Tax Regs.; see Campbell v. Commissioner, 134 T.C. at 31.

---

[11] Under sec. 7491(c) the Commissioner bears the burden of production with respect to an individual taxpayer's liability for any penalty. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). However, the burden of production as to the penalties here remains with Purple Heart because sec. 7491(c) does not apply to corporations. See NT, Inc. v. Commissioner, 126 T.C. 191, 195 (2006). In addition, we have previously held that the Commissioner does not have the burden of production as to supervisory approval under sec. 6751(b) for a penalty determined against a corporation in a notice of deficiency. Dynamo Holdings Ltd. P'ship v. Commissioner, 150 T.C. 224, 231-232 (2018). The record here includes a Civil Penalty Approval Form establishing respondent's compliance with sec. 6751(b) for each penalty. Purple Heart did not challenge whether respondent complied with sec. 6751(b), so we deem this issue conceded. See id. at 237.

**[*45]** Finally, a taxpayer may avoid a section 6662(a) penalty if it can show that it had reasonable cause and acted in good faith. Sec. 6664(c). The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's efforts to assess the proper tax liability. Id.; see Halby v. Commissioner, T.C. Memo. 2009-204, 2009 WL 2924004, at *4.

Purple Heart argues that the section 6662(a) penalties should be reduced because it disclosed the section 280E issue on a Form 8275 each year and it had a reasonable basis for its position. Purple Heart further argues that accuracy-related penalties should not apply because its return positions were reasonable and taken in good faith and imposing penalties would be unfair given the unsettled nature and confusion surrounding section 280E at the time the tax returns were prepared and filed.

Purple Heart also points out that, apart from CHAMP and Olive, there was very limited guidance available to cannabis dispensaries at that time. Additionally, the IRS never promulgated regulations for section 280E and did not issue any guidance on cannabis businesses' capitalization of costs until 2015. See Chief Counsel Advice 201504011 (Jan. 23, 2015). We previously have declined

[*46] to impose accuracy-related penalties when there was no clear authority to guide taxpayers.  See Petersen v. Commissioner, 148 T.C. 463, 481 (2017), aff'd and remanded, 924 F.3d 1111 (10th Cir. 2019); Williams v. Commissioner, 123 T.C. 144, 153 (2004); Patients Mut. Assistance Collective Corp. v. Commissioner (Patients Mut. II), T.C. Memo. 2018-208, at *5-*7; see also Foster v. Commissioner, 756 F.2d 1430, 1439 (9th Cir. 1985), aff'g in part, vacating in part 80 T.C. 34 (1983).  On the other hand, we have rejected a reasonable cause defense because we concluded, on similar facts, that the only directly relevant authority available was directly against the taxpayer's claimed tax treatment.  See Alt. Health Care Advocates v. Commissioner, 151 T.C. at 247; see also Richmond Patients Grp. v. Commissioner, T.C. Memo. 2020-52, at *21.

Even if we conclude that Purple Heart's reporting position was not without support, see Patients Mut. II, at *5-*6, the deficiencies that we sustained above are a result of a lack of substantiation rather than misallocations.  Because the resulting underpayments are attributable to negligence, therefore, like the taxpayers in Olive, Purple Heart cannot avoid the accuracy-related penalty.  See Olive v. Commissioner, 139 T.C. at 44-45; see also sec. 1.6662-4(e)(2)(iii), Income Tax Regs. (stating that adequate disclosure "will not have an effect * * *

**[*47]** where the item or position on the return * * * [i]s not properly substantiated, or the taxpayer failed to keep adequate books and records").

Mr. Stephenson may have had an explanation for destroying records showing the amounts of cannabis Purple Heart bought and sold, but he also destroyed records substantiating Purple Heart's other business expense deductions. Mr. Stephenson explained that those other records could connect him to Purple Heart's illegal distribution of cannabis under Federal law, but he understood that distributing cannabis exposed him to some risk of asset forfeiture and criminal prosecution and his interviews with national publications provided evidence of his cannabis distribution activities. His intentional destruction of all business records would not have prevented the Federal Government from connecting him to Purple Heart's illegal activities and on these facts amounts to a "conscious disregard of rules or regulations." See Olive v. Commissioner, 139 T.C. at 44; see also McCoy v. Commissioner, 76 T.C. 1027, 1029 (1981) (holding that "remote or speculative possibilities of prosecution" were not sufficient to justify a taxpayer's disregard of rules and regulations), aff'd, 696 F.2d 1234 (9th Cir. 1983); Thompson v. Commissioner, T.C. Memo. 1979-153, 1979 WL 3569 (holding that the taxpayer's "anxiety over potential investigation" was not "a reasonable basis for apprehension of the hazards of incrimination"); cf. Patients

**[\*48]** Mut. II, at \*6-\*7 (holding that a cannabis dispensary acted reasonably and "actively sought to comply with California law and our caselaw" by keeping all of its books and records to substantiate all of its claimed deductions).

Furthermore, Mr. Stephenson failed to keep sufficient records to compute COGS. Even if we accept his rationale for destroying those records as reasonable (an issue we do not reach), that rationale cannot overcome the fact that he knowingly destroyed them. Accordingly, we will sustain the accuracy-related penalty for the "remainder of each underpayment because those portions of the underpayments are attributable to negligence." See Olive v. Commissioner, 139 T.C. at 44.

Any contentions we have not addressed we deem irrelevant, moot, or meritless.

To reflect the foregoing,

An appropriate order will be issued, and decision will be entered under Rule 155.